ROBERTS, J.,
for the Court:
¶ 1. Anita White sued her stepson, Charles Thomas White (Tommy), and claimed that the DeSoto County Chancery Court should set aside two quitclaim deeds, so the properties they described could pass through the estate of Tommy’s father, Charles William White (Bill). To memorialize an earlier partnership-dissolution agreement, Tommy had used his authority under a power of attorney to transfer title to the properties from Bill to himself. Anita sought to set those quitclaim deeds aside, so they could pass to her under the residuary clause of Bill’s will. Anita had raised the same claim in an earlier consolidated complaint, but she neglected to obtain a ruling on her claim. Consequently, the chancellor found that the doctrine of res judicata applied, and granted Tommy’s motion for summary judgment. Anita appeals. She claims the chancellor erred when he granted Tommy’s motion for summary judgment. According to Anita, res judicata does not apply under the circumstances. Anita also claims that the chancellor should have granted her own motion for summary judgment. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. This appeal centers on a family business that began with Bill, who was born on September 8, 1925. In 1945, Bill was discharged from the United States Navy. He began working for a petroleum-distribution business. In the time that followed, Bill married Jeannette Hum-phreys White. They had four children, including Tommy, who was born on June 12, 1946. In 1950, Bill went into business for himself. Two years later, Bill built his first “service station” in Water Valley, Mississippi.
¶ 3. Tommy began working for his father at a young age. According to Tom.my, he prepared his first sales-tax return when he was ten years old. Approximately fifty years ago, Bill formed the C.W. White Partnership with Tommy. The purpose of the partnership was to buy real property to “enhance the sale of petroleum products.” In 1972, the partnership bought its first of many parcels of real property. The partnership built a convenience store on that property. Over time, the partnership acquired additional properties in Water Valley, Charleston, and Batesville, Mississippi. The partnership established additional convenience stores on those properties. In 1977, Bill and Tommy formed C.W. White Incorporated.[1] The corporation bought what Tommy described as a “bulk plant” in Sardis, Mississippi. Tommy’s brother, John White, became involved with the corporation after he was discharged from the United States Navy. Having earned a degree in accounting from the University of Mississippi, Tommy worked out of the corporation’s headquarters in Water Valley,-while John assumed “the logistical day-to-day transportation operation of running the trucks” out of the bulk plant at Sardis. Tommy’s sisters, Rebecca and Virginia, were likewise involved with what Tommy described as “the family business.” Although Bill “retired” to some extent during 1991, he remained involved in the businesses by acting as a consultant.
¶4. In September 1997, Bill’s wife, Jeannette, died. The next month, Bill *345 spontaneously gave Tommy a document conveying a general power of attorney in the event that Tommy ever needed to handle any of Bill’s affairs. Tommy placed the document in a safe.
¶ 5. Approximately two years later, Bill contacted Anita, whose husband had passed away. Bill and Anita had been high-school classmates. Eventually, Bill and Anita discussed marriage. Because they each had children from previous marriages, they signed a prenuptial agreement during February 2000.[2] On April 24, 2000, Bill and Anita were married.
¶ 6. Five years later, Bill decided to formally dissolve his partnership with Tommy. The dissolution agreement stated that Bill intended to transfer all of the partnership’s property and assets to Tommy. Tommy paid Bill approximately $42,600 as compensation. But apparently due to an oversight, no one had deeds prepared to effectuate or memorialize the partnership’s transfer of real property to Tommy.
¶ 7. Bill’s health began to deteriorate during early 2009. In January 2009, Bill had to be hospitalized in the intensive-care unit at Baptist Memorial Hospital. While Bill was in the hospital, his children and Anita disagreed regarding Bill’s health care. According to Tommy, “Anita seemed to feel like ... it would be better to let [Bill] ... die than it would be to sustain him.” A flurry of legal maneuvering followed. Tommy’s brother, John, successfully obtained a temporary restraining order against Anita to prevent her from making health-care decisions for Bill. Anita later had the temporary restraining order set aside.
¶8. Meanwhile, Tommy consulted an attorney and realized that because the dissolution agreement had not been filed, there was no public record regarding the partnership’s transfer of property. Tommy utilized the 1997 power of attorney to execute and record quitclaim deeds confirming the transfer of real property from the partnership to himself. Tommy filed the quitclaim deeds during January 2009. The quitclaim deeds are the subject of the present appeal.
¶ 9. On February 6, 2009, while he was still hospitalized, Bill signed an advanced-health-care directive. Bill also gave Tommy power of attorney for health care. But three days later, Anita had Bill sign documents revoking everything he had signed just three days earlier. Anita also had Bill revoke the power of attorney that he had given Tommy in 1997. Additionally, Anita had Bill sign documents giving her durable power of attorney and durable power of attorney for his health care.
¶ 10. Later that month, Anita sued Tommy. She demanded that Tommy “return all assets belonging to [Bill] that [Tommy had] transferred ... to himself and third parties from October 15,1997, to February 9, 2009.” In other words, Anita demanded that Tommy return title to the property that he had transferred via the quitclaim deeds. Anita also wanted Tommy to be enjoined from disposing of any other property that belonged to Bill.
¶ 11. Approximately one week later, Tommy filed a conservatorship petition. Anita responded and argued that Tommy was unfit to act as Bill’s conservator. She also repeated her challenge to the property transfers. Anita also successfully moved to consolidate her lawsuit with Tommy’s conservatorship petition. In *346 May 2009, the chancellor entered an agreed order appointing W.E. Davis, the DeSoto County Chancery Clerk, as Bill’s conservator.
¶ 12. Bill died approximately one month later.[3] Davis filed a petition seeking discharge as Bill’s conservator, and the authority to transfer funds to Bill’s estate. Davis never challenged the property transfers that Tommy effectuated. No one objected. The chancellor discharged Davis in August 2009. Davis tendered the proceeds of Bill’s bank account to Bill’s estate.
¶ 13. However, no one addressed the fact that Anita’s lawsuit had been consolidated with Tommy’s conservatorship petition. Anita never sought to schedule a hearing on the matter, and she neglected to secure a judgment on her complaint. Nor did she object to Davis’s request to waive an accounting, despite the fact that she had demanded an accounting in her own petition, and in her response to Tommy’s petition to be named as his father’s conservator. Likewise, Anita did not object to Davis’s statement that Bill’s bank account was the only asset that he had gathered while acting as Bill’s conservator.
¶ 14. In any event, on February 10, 2010, Anita filed another complaint to set aside the quitclaim deeds. Anita sued Tommy in her capacity as the executor of Bill’s estate and in her individual capacity. Tommy filed a motion for summary judgment and argued that Anita’s claims were barred by the doctrine of res judicata. Anita responded with her own motion for summary judgment. The chancellor agreed with Tommy. Accordingly, the chancellor granted Tommy’s motion for summary judgment,- and denied Anita’s motion for summary judgment. Anita appeals.
STANDARD OF REVIEW
¶ 15. An appellate court conducts a de novo review of a trial court’s decision to grant a motion for summary judgment. Kilhullen v. Kansas City S. Ry., 8 So.3d 168, 174 (¶ 14) (Miss.2009). Mississippi Rule of Civil Procedure 56(c) provides that summary judgment “shall be rendered ... if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” We must review the evidence in the light most favorable to the nonmoving party. Kilhullen, 8 So.3d at 174 (¶ 14).
¶ 16. To overcome a motion for summary judgment, the nonmoving party “may not rest upon the mere allegations or denials of his pleadings, but his response ... must set forth specific facts showing there is a genuine issue for trial.” M.R.C.P. 56(e). The Mississippi Supreme Court has recently held:
[I]n a summary[-]judgment hearing, the burden of producing evidence in support of, or in opposition to, the motion is a function of Mississippi rules regarding the burden of proof at trial on the issues in question. The movant bears the burden of persuading the trial judge that: (1) no genuine issue of material fact exists, and (2) on the basis of the facts established, he is entitled to [a] judgment as a matter of law. The movant bears the burden of production if, at trial, he would bear the burden of proof on the issue raised. In other words, the movant only bears the burden of production where [he] would bear the burden *347 of proof at trial. Furthermore, summary judgment is appropriate when the non[ jmoving party has failed to make a showing sufficient to establish the existence of an element essential to the party’s case, and on which that party will bear the burden of proof at trial.
Karpinsky v. Am. Nat’l Ins. Co., 109 So.3d 84, 88-89 (¶ 11) (Miss.2013) (quotations omitted).
ANALYSIS
I. Res Judicata
¶ 17. Anita claims that the chancellor erred when he found that her claim is barred by the doctrine of res judicata. “Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.” Brown v. Felsen, 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). In other words, res judicata precludes parties from litigating claims that “were made or should have been made” in a prior lawsuit. Anderson v. LaVere, 895 So.2d 828, 832 (¶ 10) (Miss.2004). The supreme court has held:
Generally, four identities must be present before the doctrine of res judicata will be applicable: (1) identity of the subject matter of the action, (2) identity of the cause of action, (3) identity of the parties to the cause of action, and (4) identity of the quality or character of a person against whom the claim is made. If these four identities are present, the parties will be prevented from relitigat-ing all issues tried in the prior lawsuit, as well as all matters which should have been litigated and decided in the prior suit. In other words, the doctrine of res judicata bars litigation in a second lawsuit on the same cause of action of all grounds for, or defenses to, recovery that were available to the parties in the first action, regardless of whether they were asserted or determined in the prior proceeding.
Id. at 832-33 (¶ 10) (citations and quotation omitted).

1. Identity of the Subject Matter

¶ 18. In the context of res judica-ta, the subject matter at issue has been characterized as the “substance” of the lawsuit. Hill v. Carroll Cnty., 17 So.3d 1081, 1085 (¶ 12) (Miss.2009). Anita argues that the substance of the earlier lawsuit was different than the substance of her current lawsuit. She admits that she had previously alleged that Tommy had misappropriated property through his power of attorney, but she argues that her claim was “clearly and solely done in an effort to indicate ... that ... Tommy ... was guilty of self[-]dealing and was unfit to serve in the fiduciary role of conservator.” But Anita omits the fact that she consolidated Tommy’s conservatorship action with her own separate lawsuit in which she demanded that Tommy “return all assets belonging to [Bill] that [Tommy] transferred ... to himself ... from October 15, 1997, to February 9, 2009.” The subject matter of Anita’s first petition was Tommy’s conveyance of property by way of his power of attorney. The subject matter of the current lawsuit is exactly the same.

2. Identity of the Cause of Action

¶ 19. A “cause of action” has been defined “as the underlying facts and circumstances upon which a claim has been brought.” Hill, 17 So.3d at 1085 (¶ 13). The term “claim” can be substituted for “cause of action.” See M.R.C.P. 2; Harrison v. Chandler-Sampson Ins., Inc., 891 So.2d 224, 233 (¶27) (Miss.2005). “In order for res judicata and the ban on claim-splitting to take effect, the litigation must involve the same claim premised upon the same body of operative fact as was previously adjudicated.” Id. at 234 (¶ 31).
*348 ¶ 20. Anita again argues that her claim in the first consolidated lawsuit was that Tommy was unfit to serve as Bill’s conservator. According to Anita, “[t]here were no causes of action asserted against [Tommy] for the execution of the deeds in the conservator proceeding, only bases given to support why he should not be appointed to serve.” Yet again, Anita neglects to mention the fact that she successfully moved to consolidate Tommy’s conservatorship action with her own lawsuit. In her previous lawsuit, Anita demanded that Tommy return all assets that he transferred from Bill to himself from October 1997 through February 2009. Anita’s second lawsuit involves the same claim — based on the same body of operative fact — that she previously raised. It was her obligation to ensure that she adjudicated her previous claim, but she failed to do so.

3. Identities of the Parties

 ¶ 21. Anita claims that the parties are not the same because she acted in her individual capacity during the first consolidated lawsuit, and she is acting — in part — in her representative capacity as the executor of Bill’s estate in the present lawsuit. “To satisfy the identity[-]of[-]parties element, strict identity of the parties is not necessary.” Harrison, 891 So.2d at 236-87 (¶ 37). As the residuary beneficiary of Bill’s will, Anita is the only party who stands to benefit from having the quitclaim deeds set aside. In either her individual or representative capacity, Anita’s interest is the same in both her previous lawsuit and the present lawsuit. In both lawsuits, she claimed that the chancellor should set aside the quitclaim deeds, so she could obtain the title to the properties through the residuary clause in Bill’s will. Thus, the identity-of-the-parties element is satisfied.
A Identity of the Quality or Character of the Person Against Whom the Claim is Made
¶ 22. “Where someone is sued in a limited or representative capacity in one cause and then personally in another, the party’s ‘quality or character’ is not the same in both actions.” In re Estate of Bell, 976 So.2d 965, 968 (¶8) (Miss.Ct.App.2008) (citing McCorkle v. Loumiss Timber Co., 760 So.2d 845, 856 (¶ 47) (Miss.Ct.App.2000)). But when a party is a named defendant in a first and second suit, the identity or character of the defendants is the same. Id. In both her previous lawsuit and the present lawsuit, Anita sued Tommy and sought to have the deeds set aside. The identity of the defendants is the same.
¶ 23. We find that all four identities of res judicata are present. Therefore, we find that the chancellor correctly held that the doctrine of res judicata precludes Anita’s present claim. It follows that we find no merit to this issue.
II. Anita’s Motion for Summary Judgment
¶ 24. Anita claims the chancellor erred when he denied her motion for summary judgment. But this issue is moot because we have found that res judicata precludes Anita’s second lawsuit.
¶ 25. THE JUDGMENT OF THE DE-SOTO COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR. BARNES, J., NOT PARTICIPATING.

. The corporation sold petroleum products to numerous customers, including some gas stations that the partnership owned. Initially, Bill was the majority shareholder, and Tommy was a minority shareholder.

. Among other things, the prenuptial agreement provided: "[NJeither Bill [n]or Anita, during the lifetime of the spouse or thereafter, ... shall take, claim, demand!,] or receive any right or homestead or any other inheritance as a result of the death of the spouse.”

. In his will, Bill left Anita a life estate in his house in Water Valley. He also named her as the residuary beneficiary of his will.