# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CT-01083-SCT

*IN THE MATTER OF THE ESTATE OF
CHARLES WILLIAM WHITE, DECEASED:
ANITA WHITE, INDIVIDUALLY AND AS
EXECUTOR OF THE ESTATE OF CHARLES
WILLIAM WHITE*

*v.*

*CHARLES THOMAS WHITE*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 11/23/2011 |
| TRIAL JUDGE: | HON. PERCY L. LYNCHARD, JR. |
| TRIAL COURT ATTORNEYS: | JOHN THOMAS LAMAR, III |
| | H. R. GARNER |
| | JOHN THOMAS LAMAR, JR. |
| | ROBERT R. MORRIS |
| | ROBERT RYAN REVERE |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JOHN THOMAS LAMAR, III |
| | JOHN THOMAS LAMAR, JR. |
| ATTORNEYS FOR APPELLEE: | ROBERT R. MORRIS, III |
| | ROBERT RYAN REVERE |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | REVERSED AND REMANDED - 12/11/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     A chancellor held that *res judicata* prevented an action to set aside certain deed

transfers because the issue had been raised in a conservatorship that had been closed.  But

because the judgment dismissing the conservatorship was not a final judgment on the merits, we reverse.

## FACTS AND PROCEDURAL HISTORY

¶2.     Charles William White ("Bill") and his son Charles Thomas White ("Tommy"), were partners in a business that owned and operated convenience stores. In 2000, during the course of the partnership, Bill married Anita White. In 2005, Tommy bought his father's share of the partnership for $42,600, but in dissolving the partnership, Bill and Tommy neglected to execute and file deeds transferring the partnership's real property.

¶3.     In early 2009, Bill's health declined rapidly, and Anita and Tommy began to clash over Bill's healthcare. Tommy wanted his father to receive life-sustaining treatment and Anita wanted her husband to die with dignity. During this time, Tommy realized that he and his father had failed to execute deeds transferring the partnership's real-property assets. Tommy used a durable power of attorney his father had given him years before to execute quit-claim deeds transferring the partnership property to himself.

¶4.     Bill and Anita continued to clash over who had authority to make healthcare decisions for Bill, so Tommy filed a petition for a conservatorship for his father's benefit and sought appointment as his father's conservator. Anita filed a counterclaim that challenged Tommy's fitness to serve as his father's conservator and sought to have Tommy return all assets he had transferred to himself using his father's power of attorney. The chancellor agreed that a conservatorship was appropriate, but he appointed a third party as Bill's conservator.

¶5.     When Bill died in June 2009, the conservator filed a motion asking to be discharged from his duties and to be allowed to distribute the assets of the conservatorship to Bill's

2

estate. The parties agreed to an order discharging the conservator and to a distribution of funds held by the conservator to Bill's estate. The order noted "that W.E. Davis is discharged as Conservator for C.T. White, and that formal accounting is waived," and "this Conservatorship is closed." The chancellor's order made no mention of Anita's action to set aside the deed transfers.

¶6.     In February 2010, Anita filed suit to set aside the quit-claim deeds and to redeem the real property Tommy had acquired using his father's power of attorney. The parties filed competing motions for summary judgment. Tommy argued that the order discharging the conservator barred relitigation of the conveyances because Anita sought to have the conveyances set aside in the conservatorship. Anita argued that the transfers were not in Bill's best interests and that the transfers should be set aside and the property returned to Bill's estate. The chancellor held that Anita's action was barred by *res judicata*, granted Tommy's motion, and denied Anita's cross-motion for summary judgment.

¶7.     Anita appealed to the Court of Appeals, arguing that her action was not barred by *res judicata* and that the chancellor had erred by denying her motion for summary judgment. The Court of Appeals affirmed the chancellor, finding that "all four identities of *res judicata* [were] present," and that "the chancellor correctly held that the doctrine of res judicata preclude[d] Anita's second lawsuit."[1] We granted Anita's petition for a writ of certiorari.

**ANALYSIS**

---

[1]*Estate of White v. White*, No. 2012-CA-01083-COA, 2014 WL 1190245, at *6 (Miss. Ct. App. July 5, 2014).

¶8. The issue before us is whether the doctrine of *res judicata* bars Anita's suit to set aside the quit-claim deeds. If, as Anita argues, it does not, then the chancellor erred in granting Tommy's motion for summary judgment.

¶9. We conduct a *de novo* review of a trial court's grant of summary judgment.[2] A civil defendant may raise *res judicata* in a motion for summary judgment where a plaintiff's suit centers around issues decided in a previous lawsuit.[3] But for *res judicata* to apply, the defendant must show that the judgment rendered in the previous action was a final judgment on the merits.[4]

¶10. A final judgment on the merits is "[a] judgment based on the evidence rather than on technical or procedural grounds."[5] While our prior cases have considered whether a judgment constituted a "final judgment on the merits" on a case-by-case-basis, a judgment generally will not be considered a "final judgment on the merits" when the first case was dismissed for a procedural defect or some other technical ground that prevented the court

---

[2] ***Conrod v. Holder***, 825 So. 2d 16, 18 (Miss. 2002) (citing ***Daniels v. GNB, Inc.***, 629 So. 2d 595, 599 (Miss. 1993)).

[3] ***Little v. V&G Welding Supply, Inc.***, 704 So. 2d 1336, 1337-38 (Miss. 1997) (citing ***Estate of Anderson v. Deposit Guar. Nat'l Bank***, 674 So. 2d 1254, 1256 (Miss. 1996)).

[4] ***EMC Mortg. Corp. v. Carmichael***, 17 So. 3d 1087, 1090 (Miss. 2009) (citing ***Anderson v. LaVere***, 895 So. 2d 828, 833 (Miss. 2004)) ("[T]he prior judgment must be a final judgment that was adjudicated on the merits.").

[5] *Black's Law Dictionary* 920 (9th ed. 2009).

4

from reaching the merits of the case.[6] If, in the previous case, the court did render a final judgment on the merits, res judicata will apply if both cases share four common identities.[7]

¶11.    In granting Tommy's motion for summary judgment, both the chancellor and Court of Appeals thoroughly analyzed the four common identities necessary for *res judicata* to apply, but both courts failed to analyze the threshold requirement of a final judgment. Absent a final judgment, the alignment of the four identities is irrelevant.[8]

¶12.    The chancellor's order discharging the conservator did not address any of the contested issues. As our precedent shows, a judgment based on technicalities or procedural issues generally will not be considered a final judgment on the merits. In his order discharging the conservatorship, the chancellor could have rendered a judgment on the contested claims between Tommy and Anita, but he did not.

¶13.    The record indicates that the conservatorship was opened in early 2009 and closed when Bill died in June 2009. Far from a final judgment concerning the merits of the contested issues, the final judgment discharging the conservator was based solely on Bill's

---

[6] *Harrison v. Chandler-Sampson Ins., Inc.*, 891 So. 2d 224, 229 (Miss. 2005) (quoting *Costello v. United States*, 365 U.S. 265, 285, 81 S. Ct. 534, 544, 5 L. Ed. 2d 551 (1961)) ("If the first suit was dismissed for defect of pleadings, or parties, or a misconception of the form of proceeding, or the want of jurisdiction, or was disposed of on any ground which did not go to the merits of the action, the judgment rendered will prove no bar to another suit.").

[7] *Hill v. Carroll Cnty.*, 17 So. 3d 1081, 1085 (Miss. 2009). The four common identities are: "(1) identity of the subject matter of the action; (2) identity of the cause of action; (3) identity of the parties to the cause of action; and (4) identity of the quality or character of a person against whom the claim is made." *Hill*, 17 So. 3d at 1085 (citing *Harrison v. Chandler-Sampson Ins., Inc.*, 891 So. 2d 224, 232 (Miss. 2005)).

[8] *EMC Mortg. Corp.*, 17 So. 3d at 1090 (citing *Anderson*, 895 So. 2d at 833).

death. The chancellor considered no other evidence when entering his order.[9] Although Tommy correctly points out that Anita requested the court set aside the deed transfers in the conservatorship proceeding, the chancellor never addressed the issue.

**CONCLUSION**

¶14. Because there was no final judgment on the merits, we must reverse the judgment of the Court of Appeals and the chancellor's judgment dismissing Anita's claims and remand the case to the DeSoto County Chancery Court for further proceedings consistent with this opinion.

¶15. **REVERSED AND REMANDED.**

**WALLER, C.J., RANDOLPH, P.J., KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR. LAMAR, J., NOT PARTICIPATING.**

---

[9] *See* Miss. Code Ann. § 93-13-267 (Rev. 2013) ("A conservator may resign or be discharged in the same manner as a guardian of a minor and may also be discharged by the appointing court when it appears that the conservatorship is no longer necessary."). When a person dies, he no longer needs a conservatorship. *See Estate of Atkins v. Sartin*, 422 So. 2d 754, 757 (Miss. 1982) (noting that a conservator could not withdraw funds belonging to a person subject to a conservatorship after the person's death because the conservatorship ceased upon the person's death).