# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-IA-00933-SCT

*ELIZABETH L. STRICKLAND, INDIVIDUALLY,
AND AS TRUSTEE OF THE ELIZABETH LANCE
BROOME REVOCABLE TRUST, STEPHEN LUKE
BROOME AND JESSE ALAN BROOME*

*v.*

*ESTATE OF STEVE ALAN BROOME AND AMY
ALYECE BROOME, EXECUTRIX*

| | |
|---|---|
| DATE OF JUDGMENT: | 6/20/2014 |
| TRIAL JUDGE: | HON. DEBORAH J. GAMBRELL |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | S. ROBERT HAMMOND, JR. |
| | NICHOLAS KANE THOMPSON |
| ATTORNEY FOR APPELLEE: | JONATHAN MICHAEL FARRIS |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | REVERSED AND REMANDED |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1. Following Steve Broome's death, his ex-wife Elizabeth Strickland and his children, Stephen Luke Broome and Jesse Alan Broome, filed claims against Steve's estate for child support arrears, other unpaid support obligations, and for life insurance proceeds. The chancellor dismissed all of the claims, holding that the claims were not valid because they were not reduced to a judgment before Steve's death and that the claims were barred by *res judicata*. We hold that the chancellor erred in dismissing the

claims, since Elizabeth, Stephen, and Jesse presented sufficient evidence to satisfy Mississippi Code Section 91-7-149. Therefore, we reverse the chancellor's judgment and remand for proceedings consistent with the instant opinion.

## Factual Background and Procedural History

¶2. Steve Broome and Elizabeth Strickland married in 1986. They had two childrenB Luke, born in 1988, and Jesse, born in 1990. Steve and Elizabeth divorced in 2002. They entered into a Child Custody and Support and Property Settlement Agreement (the agreement). According to the agreement, Steve and Elizabeth had joint legal custody of the children, and they had joint physical custody of Luke, with Luke spending every other week with each parent. Elizabeth had physical custody of Jesse, and Steve had visitation.

¶3. Pursuant to the agreement, Steve was ordered to pay $637 per month in child support. Elizabeth was to maintain health insurance for the children, and Steve was to reimburse her for half of the premium and any medical expenses not covered by insurance. They were supposed to purchase an MPACT college savings plan, with each party paying half. The agreement provided the following about life insurance: "Each party shall maintain the same amount of life insurance and keep the beneficiary the same." Finally, the agreement included a waiver provision, waiving and relinquishing any and all rights to inherit from the other and agreeing to "make no claim of any kind whatsoever against the estate of the other in the event of their death."

¶4. Soon after the divorce, Jesse tried living with each parent every other week as Luke was doing. In June 2003, Steve filed a petition for modification of the divorce judgment. Based on Jesse's living arrangements, Steve sought to have joint physical

custody of Jesse and to have his child support obligation terminated. Elizabeth responded with a petition for contempt, alleging that Steve was behind on child support and that he no longer had a life insurance policy naming Elizabeth as the beneficiary. The matter never went to trial. In March 2004, Steve and Elizabeth signed an agreed order acknowledging a material change in circumstances. A few months later, Luke signed a custody election in favor of Steve.[1] The modification and contempt proceeding remained dormant until 2006, when the court entered a Rule 41 order of dismissal for lack of prosecution. Neither party opposed the dismissal nor moved to have it set aside. At that time, Luke was 18 and Jesse was 15.

¶5. Jesse continued to live with each parent every other week. Steve's estate maintains that each parent provided for him when he was at their house and that they split major expenses equally. Jesse enrolled at Pearl River Community College (PRCC) in 2012, and Steve paid half of the cost, but Jesse did not finish the first semester.

¶6. According to Steve's estate, Luke began abusing drugs and alcohol when he was in high school, and he had to repeat the twelfth grade. Steve's estate writes that Luke did not like Elizabeth's live-in boyfriend, so he lived with Steve full time. After high school, Steve sent Luke to rehabilitation and paid for his treatment. Upon Luke's return to Steve's house, Steve told Luke that he had to stay sober and either work full time or go to school full time. Luke did neither, and Steve asked him to leave in December 2007. In 2010, Luke enrolled at the University of Southern Mississippi, at age 21. The estate maintains that Steve paid for half of Luke's tuition. Luke failed to stay enrolled. In 2011,

---

[1] Elizabeth now claims that Steve coerced Luke into signing the custody and that Luke never went to live with Steve full time.

Luke enrolled at Pearl River Community College. Again, Steve paid for half of Luke's tuition and gave him $300 a month for rent. Luke graduated from Pearl River in 2013, at age 24.

¶7. Steve was diagnosed with cancer in 2010, and he passed away in August 2013, leaving the entirety of his estate to Amy Broome, his current wife, in his will. Amy was the executrix of the will. The will was admitted to probate, and the notice to creditors was published. Elizabeth filed claim against the Broome Estate for $400,000 plus interest, which she claimed was the amount of the life insurance policy Steve was supposed to have, with her as the named beneficiary. She filed a second claim, joined by their adult sons, claiming $161,602 for back child support, half of the boys' health insurance premiums, and half of college tuition for Luke to attend Louisiana State University and Jesse to attend Mississippi State University. Luke was 25 and Jesse was 23 at that time. The Estate objected to the claims.

¶8. Elizabeth propounded discovery to the Estate and sought to take Amy's deposition, individually and as executrix. When the Estate did not respond, Elizabeth filed a motion to compel discovery and a motion to compel Amy's deposition. The Estate filed a motion to quash discovery, which also called into question the validity of Elizabeth's claims. Elizabeth then filed a Motion to Determine the Technical Adequacy of the Claims. After a hearing, the chancellor denied all of Elizabeth's motions. The chancellor held that the claims against the Estate were not valid because they should have been reduced to a judgment in the divorce action prior to Steve's death. Elizabeth filed a motion to reconsider, which the chancellor denied. In addition to holding that Elizabeth was not entitled to relief because her claims had not been reduced to a judgment, the chancellor

held that the claims were barred by *res judicata* because they could have been raised in the 2003 contempt proceeding. The chancellor dismissed the probate claims. Elizabeth petitioned for and was granted the instant interlocutory appeal.

**Standard of Review**

¶9. Although neither party filed a motion to dismiss, the chancellor dismissed Elizabeth's probate claims after she filed a Motion to Determine the Technical Adequacy of the Claims. A "chancellor's finding that the claims did not meet the requirements under the law is a question of law." *In re Estate of Lingle*, 822 So. 2d 320, 322 (¶10) (Miss. Ct. App. 2002). Questions of law are reviewed de novo. *Id.* (citing *Matter of Estate of Mason*, 616 So. 2d 322, 327 (Miss. 1993)).

**Discussion**

¶10. Elizabeth raises two primary issues on appeal. The first is that the chancellor erred in dismissing the probate claims, as the claims more than complied with Section 91-7-149, were not barred by *res judicata*, and were within all applicable statutes of limitations. The second issue involves the chancellor's denial of Elizabeth's motions to compel discovery.

**I.      Compliance with Section 91-7-149**

¶11. Mississippi Code Section 91-7-149 provides the procedure for probating claims against an estate. It provides, in pertinent part,

> Any person desiring to probate his claim shall present to the clerk the written evidence thereof, if any, or if the claim be a judgment or decree, a duly certified copy thereof, or if there be no written evidence thereof, an itemized account or a statement of the claim in writing, signed by the creditor, and make affidavit, to be attached thereto, to the following effect, viz.: That the claim is just, correct, and owing from the deceased; that it is not usurious; that neither the affiant nor any other person has received

payment in whole or in part thereof, except such as is credited thereon, if any; and that security has not been received therefor except as stated, if any.

Miss. Code Ann. § 91-7-149 (Rev. 2013). Therefore, "[a] probated claim must substantially comply with the provisions of Miss[issippi] Code [Section] 91-7-149." *Central Optical Merchandising Co. v. Lowe's Estate*, 249 Miss. 61, 160 So. 2d 673, 678 (1964). "The written evidence or statement of claim must on its face show a *prima facie* right to recover from the estate or that liability exists on the part of the estate." *In re Estate of Lingle*, 822 So. 2d at 322-23 (¶12) (citing *Wilson v. Yandell*, 174 Miss. 713, 722, 165 So. 430, 433 (1936)). To be adequate, a claim "shall give notice that a claim exists against the estate, for payment of which the creditor looks to the estate, that the statement shall be so clear and unambiguous as to distinguish the claim with reasonable certainty from all other similar claims, and that it shall give such information concerning the nature and amount of the demand as will enable the representative to act intelligently in providing for its payment or in rejecting it." *Central Optical Merchandising Co.*, 160 So. 2d at 678.

¶12. Elizabeth filed two claims against the Estate. On her own, Elizabeth asserted that a provision of the divorce decree entitled her to $400,000 in life insurance proceeds that Steve was required to maintain with her as the beneficiary. Elizabeth, joined by Stephen and Jesse, also filed a claim for $161,602.56, comprised of child-support arrearages, Steve's portion of Stephen's and Jesse's health insurance premiums that Steve had not paid, and half of Stephen's and Jesse's college expenses. As proof of both claims, Elizabeth submitted the Agreement as a contract; the final judgment of divorce; and an itemized statement of the monies Steve owed, with affidavits from Elizabeth, Stephen,

and Jesse. After the hearing, Elizabeth submitted a significant amount of supplemental information in an attempt to support her claims, including documents concerning the life insurance policy, correspondence between Steve and Elizabeth about their sons and related expenses, Elizabeth's payroll documents showing health insurance deductions, and a plethora of documents related to their sons' college expenses.

¶13.   Without hearing any testimony, which Elizabeth attempted to offer at the hearing, the chancellor dismissed Elizabeth's claims because the claims were not "valid." However, the Court has little to go on from the record on the basis of the chancellor's order. The hearing before the chancellor was brief, and the chancellor's order contains little explanation.  In the chancellor's initial order, the entirety of the analysis is as follows:

> The [c]ourt[,] after oral argument, supplemental information[,] and review of the Cause No. 2001-0327-GN-W finds that *the claims asserted are not valid as it involves issues relating to past due support and other matters that should have been reduced to a judgment in the prior divorce action*. (A petition for Contempt was filed in said action in 2003 and an Order of Dismissal being entered on the 3rd day of May, 2006.)

> The Motion to Compel Discovery and the Motion to Compel Deposition are hereby denied.  The [c]ourt further finds that the Claims of Elizabeth Strickland and others stemming from the divorce action are not valid and all relief pertaining thereto is hereby denied.

(Emphasis added.)   The chancellor's order denying Elizabeth's motion to reconsider contained an almost identical statement, but the order also included that the claims were barred by *res judicata*.

¶14.   The Court holds that the chancellor's order is ambiguous, as it does not specifically address whether the claims complied with Section 91-7-149, which was the only issue before the chancellor at the time.   Furthermore, in ***Raspilair v. Estate of***

***Raspilair***, 583 So. 2d 970, 971-2 (Miss. 1991), the Court found that trial court erred in dismissing Ruth Raspilair's claim for life insurance proceeds and back alimony against her ex-husband's estate based on Ruth's presentation of their divorce decree containing a life insurance requirement. "We find that Ruth made and proved a valid claim against the estate for $30,600, which the chancellor should have allowed, as authorized under Miss[issippi] Code Ann[otated section] 91-7-165." Therefore, Elizabeth's presentation of the divorce decree, the agreement, and other various documents was sufficient to satisfy the requirements of Section 91-7-149.

¶15.    To the extent the chancellor dismissed Elizabeth's claims on the merits, such action was improper, as the merits were not before the chancellor to decide. As the Court explained in ***Central Optical***, 249 Miss. at 72, 160 So. 2d at 678 (emphasis added):

> Presentation of a claim against an estate is in many respects similar to the filing of a suit against a defendant. The main purposes of pleading and procedure are to obtain a clear definition of the issues between the parties and to reveal all of the facts, in order to obtain a fair and equitable decision of the controversy. *Where a claimant against an estate presents in good faith a claim which is in substantial compliance with the foregoing requirements, it is not equitable to permit the deceased's representative to wait until the six months have expired, then to assert the itemized account is not technically sufficient, and thereby to bar an otherwise legitimate debt of the estate.*

Had Elizabeth's claims not been compliant with the statute, the more appropriate remedy would have been to permit Elizabeth to correct any deficiency, if possible.

¶16.    By way of comparison, Elizabeth's motion to determine the technical adequacy of her claims was akin to a Mississippi Rule of Civil Procedure 12 motion, and the chancellor's order dismissing her claims converted the motion to a Mississippi Rule of Civil Procedure 56 motion. "[S]ummary judgment practice under Rule 56 is inapplicable

in contests of probated claims because it is 'inconsistent' with the statutory procedure which necessitates that a claimant enter court to introduce evidence in support of his claim and permits a personal representative to rebut the claim." ***Biloxi Reg'l Med. Ctr., Inc. v. Estate of Ross***, 546 So. 2d 667, 671 (Miss. 1989) (citations omitted).  While it is true that Elizabeth did present various items in support of her claims, she was not permitted to present testimony on the claims and, on several occasions orally and in writing, asserted that she was not yet seeking an adjudication on the merits.  Therefore, Elizabeth has not had her day in court at which she could attempt to prove her claims.[2]

¶17.   We reverse the chancellor's judgment and remand the case to the chancery court for proceedings consistent with the instant opinion.

## II.   *Res Judicata*

¶18.   Additionally, the chancellor erred in finding that *res judicata* applied to the claims of past-due child support obligations and the life insurance policy because of the prior contempt action that had resulted in a Mississippi Rule of Civil Procedure 41(d) dismissal.  "For *res judicata* to apply, the defendant must show that the judgment rendered in the previous action was a final judgment on the merits.  A final judgment on the merits is 'a judgment based on the evidence rather than on the technical or procedural grounds.'" ***Estate of White v. White***, 152 So. 3d 314, 317 (&&9-10) (Miss. 2014).  Thus, the Rule 41(d) dismissal of the prior contempt actions is not a judgment on the merits for the application of *res judicata*.

## III.   Discovery

---

[2] Elizabeth still must *prove* her claims by clear and convincing evidence.  *See* ***Biloxi Reg'l Med. Ctr., Inc. v. Estate of Ross***, 546 So. 2d 667, 670 (Miss. 1989).

¶19.    Elizabeth's last claim is that the chancellor erred in denying her motions to compel discovery.  Elizabeth sought discovery to determine the whereabouts of the life-insurance proceeds to which she believed she was entitled.   Chancellors have considerable discretion in matters relating to discovery; thus, "[t]he trial court's grant or denial of a motion to compel is subject to an abuse of discretion standard of review on appeal." *Elec. Data Sys. Corp. v. Miss. Div. of Medicaid*, 853 So. 2d 1192, 1209 (&57) (Miss. 2003) (quoting *Taylor Machine Works, Inc. v. Great American Surplus Lines Ins. Co.*, 635 So. 2d 1357, 1363 (Miss. 1994)).   "The trial court has considerable discretion in matters relating to discovery and its order will not be disturbed unless there has been an abuse of that discretion."   *French v. Druetta*, 399 So. 2d 1327, 1329 (Miss. 1981) (quoting *Clark v. Miss. Power Co.,* 372 So. 2d 1077, 1080 (Miss. 1979)).

¶20.    It appears that the chancellor based her decision to deny the motion to compel discovery on the fact that the chancellor also found the claims were invalid.  However, as we have explained above, the chancellor erroneously concluded that the claims were invalid; therefore, any decision stemming from such conclusion may also be incorrect. We reverse the chancellor's judgment denying Elizabeth's motion to compel discovery and remand for the chancellor to reconsider the issue in light of our analysis.

**Conclusion**

¶21.    We hold that Elizabeth's and her sons' claims against Steve's estate sufficed to meet the requirements found in Section 91-7-149, and the chancellor erred in dismissing the claims as invalid and barred by *res judicata*.  The merits of the claims were not before the chancellor at the time, and on remand, Elizabeth and her sons still must prove their claims by clear and convincing evidence subject to any defenses that the Estate may raise.

*See Biloxi Reg'l Med. Ctr., Inc. v. Estate of Ross*, 546 So. 2d 667, 670 (Miss. 1989). Additionally, we reverse the chancellor's judgment denying Elizabeth's motion to compel discovery, and we remand the case for the chancellor to reconsider whether the motion to compel discovery should or should not be granted.

¶22.    **REVERSED AND REMANDED.**

**DICKINSON, P.J., LAMAR, KITCHENS, PIERCE AND KING, JJ., CONCUR. WALLER, C.J., AND RANDOLPH, P.J., NOT PARTICIPATING.**