# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-00291-COA

| | |
|---|---|
| **BURNETTE AVAKIAN, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF NORAIR AVAKIAN, DECEASED** | **APPELLANT/ CROSS-APPELLEE** |

**v.**

| | |
|---|---|
| **WILMINGTON TRUST, NATIONAL ASSOCIATION, AS SUCCESSOR TRUSTEE TO CITIBANK, N.A., AS TRUSTEE FOR BEAR STEARNS ASSET BACKED SECURITIES TRUST 2007-2, ASSET-BACKED CERTIFICATES, SERIES 2007-2** | **APPELLEE/ CROSS-APPELLANT** |

| | |
|---|---|
| DATE OF JUDGMENT: | 01/27/2017 |
| TRIAL JUDGE: | HON. H.J. DAVIDSON JR. |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | STEVEN CRAIG PANTER |
| ATTORNEYS FOR APPELLEE: | WILLIAM JACOB LONG IV |
| | CHRISTOPHER DANIEL MEYER |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | ON DIRECT APPEAL: AFFIRMED. ON CROSS-APPEAL: AFFIRMED - 04/10/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., GREENLEE AND TINDELL, JJ.**

**LEE, C.J., FOR THE COURT:**

¶1.    This case is the latest in a series of litigation between the parties regarding Wilmington Trust, National Association's right to foreclose on Burnette Avakian's home. In this appeal, we must decide whether the chancery court—finding that res judicata applied—properly granted Wilmington Trust's motion for partial summary judgment on its claims for judicial foreclosure, breach of contract, and declaratory judgment.  On cross-

appeal, we must also decide whether the chancery court properly granted Burnette's motion for partial summary judgment on Wilmington Trust's claim for unjust enrichment. Following a de novo review, we affirm the judgments of the chancery court.

¶2.    We acknowledge the facts and circumstances giving rise to the instant action on appeal are identical to those in previous actions between these same parties. *See Estate of Avakian v. Wilmington Tr. Nat'l Ass'n*, 231 So. 3d 208 (Miss. Ct. App. 2017) (probate action); *Avakian v. Citibank N.A.*, 773 F.3d 647 (5th Cir. 2014); *Avakian v. Citibank N.A.*, No. 1:12-CV-00139-SA-DAS, 2015 WL 4643129 (N.D. Miss. Aug. 4, 2015) (federal action).

¶3.    Because the chancery court's decision to grant summary judgment on certain claims in the instant case was based on the doctrine of res judicata, it is necessary to detail not only the facts and procedural history of the instant case, but also the prior actions between the parties.

**FACTS**

¶4.    In September 2002, Norair and Burnette Avakian, husband and wife, purchased a house in Columbus, Mississippi, and executed a deed of trust to secure a loan for the purchase from Southstar Financing LLC. At that time, the title to the property was vested in both their names as joint tenants. Then, in November 2004, Norair executed a deed conveying title to the property to Burnette alone. In March 2006, the Avakians refinanced the mortgage with EquiFirst Corporation, and Norair took out a loan in his name only and executed a promissory note in favor of EquiFirst. It was undisputed that the Avakians intention was to structure the ownership and debt so that Burnette would not be liable for the

2

debt if Norair died. However, because title was vested in Burnette alone, EquiFirst required both Burnette and Norair to execute a deed of trust. Norair was out of state at the time of the closing, so Burnette and Norair each signed separate deeds of trust on the property. This resulted in two deeds of trust on the property—one executed by Norair on March 7, 2006, and one executed by Burnette on March 8, 2006. Each deed of trust was recorded as a separate instrument with the Lowndes County Chancery Clerk.

¶5.     Norair's promissory note to EquiFirst was later sold to Citibank N.A. in its capacity as trustee of the Bear Sterns Asset Backed Securities Trust. J.P. Morgan became the servicing agent for Citibank. On December 3, 2012, Wilmington Trust replaced Citibank as the trustee for Bear Sterns. So, J.P. Morgan served as the servicer for the loan, and EquiFirst, Citibank, and Wilmington Trust were the successive creditors.

¶6.     Norair defaulted on the promissory note and died shortly after in July 2010. In early 2012, Citibank, the trustee/creditor at that time, noticed Burnette its intention to foreclose on the house and set the foreclosure sale for May 10, 2012. On May 9, 2012, the day before the scheduled foreclosure sale, Burnette filed suit in the chancery court against Citibank seeking to enjoin the foreclosure. This began the series of litigation between the parties present on appeal (through Wilmington Trust's predecessor, Citibank).

**PROCEDURAL HISTORY**

1.     *Federal Action*

¶7.     On May 9, 2012, Burnette filed a lawsuit in chancery court to enjoin Citibank from foreclosing on the property. She argued that the two deeds of trust on the home were both

3

void pursuant to Mississippi Code Annotated section 89-1-29 (Rev. 2011) because neither deed contained the signatures of both Burnette and Norair. Citibank removed the lawsuit to the United States District Court for the Northern District of Mississippi. Following a trial, the district court entered a final judgment on February 10, 2014, in favor of Burnette, holding that the deeds of trust on the house were unenforceable. *See Avakian v. Citibank N.A.*, No. 1:12-CV-00139-SA-DAS, 2014 WL 346861 (N.D. Miss. Jan. 30, 2014), *rev'd and remanded*, 773 F.3d 647 (5th Cir. 2014).

¶8.     Citibank appealed the decision to the Fifth Circuit Court of Appeals. *See Avakian*, 773 F.3d at 649. During the appeal, the Fifth Circuit issued a stay on May 12, 2014, that prohibited foreclosure of the property during the pendency of the appeal. On December 9, 2014, the Fifth Circuit reversed the district court, finding that the Mississippi Supreme Court would likely construe the two deeds of trust as together creating a valid deed of trust. *Id*. at 653. Thus, the Fifth Circuit found the two deeds of trust together formed a valid and enforceable instrument and remanded the case for further proceedings. *Id*.

¶9.     On remand in the district court, Citibank filed a motion for entry of final judgment. *See Avakian*, 2015 WL 4643129, at *1. In response, Burnette filed a motion to dismiss the action without prejudice, arguing that it became moot on December 3, 2012, when Wilmington Trust succeeded Citibank as trustee for the lienholder. *Id*. at *2. Citibank responded by filing a motion to substitute Wilmington Trust as the defendant and then renewed its request for entry of a final judgment. *Id*. The district court noted that "[Rule 25 of the Federal Rules of Civil Procedure] states that when 'an interest is transferred, the action

4

may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party.'" *Id.* (quoting Fed. R. Civ. P. 25(c)). In applying the rule, the district court found that it was proper for Citibank to continue as the named defendant even after it ceased to have any interest in the subject property. *Id.* Further, the district court noted that "[Burnette] [did] not dispute that Wilmington succeeded Citibank as trustee on December 3, 2012. In fact, [Burnette relied] upon the complete transfer of Citibank's interest to Wilmington in arguing that th[e] action [was] moot because Citibank no longer ha[d] any interest in the outcome." *Id*. at *3. Accordingly, the district court denied Burnette's motion to dismiss with prejudice, granted Citibank's motion to substitute Wilmington Trust, and granted Citibank's motion for final judgment in favor of Wilmington Trust. *Id*.

2.      *Probate Action*

¶10.    On July 28, 2010, Burnette filed a petition in the Lowndes County Chancery Court to probate Norair's last will and testament. That same day, the chancery court entered an order probating the last will and testament and issued letters testamentary to Burnette to serve as executor of the Estate. Burnette did not identify any entity as a known creditor of the Estate and did not provide Wilmington Trust, or any creditor, notice by mail regarding the probate of the Estate, thereby failing to comply with Mississippi Code Annotated section 91-7-145 (Rev. 2013). She did file a "Notice to Creditors Affidavit," stating that she had and would notify known creditors; however, she did not list any specific creditors.

¶11.    Citibank made two attempts to foreclose in 2010 but did not complete the process.

5

During the pendency of the 2012 foreclosure attempt, after the district court (prior to appeal) ruled that the deeds of trust were void and unenforceable, Citibank (through its servicer, J.P. Morgan) filed a statement of claim on October 14, 2014, in the probate proceeding pending in chancery court based upon Norair's debt arising from the promissory note of $815,905.06. The statement of claim set forth that "[t]he claim was presumed secured pursuant to a mortgage loan; however, the claim has been deemed unsecured via [the district court's judgment]." Burnette filed her contest of the statement of claim, asserting that any claim on the promissory note was time-barred by Mississippi Code Annotated section 15-1-25 (Rev. 2012), and that pursuant to Mississippi Code Annotated section 15-1-3 (Rev. 2012), the statute of limitations had run on the underlying claim.

¶12. The chancellor found that although Citibank filed its statement of claim outside of the ninety-day statutory time period to probate a claim against the Estate under Mississippi Code Annotated section 91-7-151 (Rev. 2013), the claim was still timely filed due to Burnette's failure as executor to provide all reasonably ascertainable creditors with notice of probate of the Estate as required by section 91-7-145.

¶13. In regard to Burnette's argument that the statute of limitations had run on the underlying claim, the chancellor noted that if the creditor is not paid on a claim based on the promissory note during the probate proceeding, the creditor must then bring a separate civil suit against the Estate to enforce that claim on the promissory note before the four-year statute of limitations in such actions expires under section 15-1-25. The chancellor acknowledged that letters testamentary were issued to Burnette on July 28, 2010; the

6

ninety-day moratorium on bringing a civil suit against an executor under Mississippi Code Annotated section 91-7-239 (Rev. 2013) expired on October 26, 2010; and on that date, the four-year statute of limitations established by section 15-1-25 began to run and expired on October 26, 2014. The chancellor determined that although Wilmington Trust, or any other creditor, had not filed a civil action against the Estate prior to October 26, 2014, the Fifth Circuit's stay (entered May 12, 2014) prohibiting any creditor from foreclosing on the property began and triggered the tolling of the statute of limitations under section 15-1-25 as to the promissory note. The chancellor also subsequently found that "the tolling period ceased at its earliest on December 9, 2014, approximately seven months later, when the Fifth Circuit reversed the U.S. District Court, or at the latest on August 4, 2015, when the U.S. District Court rendered a final judgment."

¶14.    Burnette appealed the chancellor's decision in the probate action to this Court in *Estate of Avakian,* 231 So. 3d at 210 (¶1). In *Estate of Avakian*, this Court affirmed the judgment of the chancery court, holding there was "no error in the chancellor's finding that the statement of claim in this probate proceeding was timely filed, and . . . no error in the chancellor's determination that 'the Fifth Circuit's stay entered May 12, 2014, prohibiting [Equifirst, J.P. Morgan, Citibank, and Wilmington Trust] Creditor from foreclosing on the property pending the appeal began the tolling of section 15-1-25 as to the promissory note in accordance with section 15-1-57.'" *Id.* at 218 (¶40). The supreme court denied Burnette's petition for writ of certiorari. *See Avakian v. Wilmington Tr. Nat'l Ass'n*, 229 So. 3d 122 (Miss. 2017).

### 3. *Current State Action*

¶15. Following the final judgment of the federal district court (on remand), Wilmington Trust filed the current action now on appeal on February 23, 2015. This filing came less than three months after reversal and, thus, was timely according to this Court in the Estate action. In the present suit, Wilmington Trust made the following claims: Count I (judicial foreclosure); Count II (breach of contract); Count III (unjust enrichment); and Count IV (declaratory judgment). On November 10, 2015, Wilmington Trust moved for partial summary judgment as to Counts I, II, and IV of the complaint. Burnette opposed the motion, arguing that there was a genuine issue of material fact as to whether Wilmington Trust was the true owner and holder of the promissory note and deeds of trust.

¶16. The chancellor found that res judicata barred this defense raised by Burnette. The chancellor also found that it was undisputed that the Avakians had defaulted on the promissory note, that none of the indebtedness had been repaid, and that the deed of trust provided for foreclosure upon default. Finding that no other issues were left unresolved by previous litigation or were ripe for decision and not raised, the chancellor granted partial summary judgment in favor of Wilmington Trust as to Counts I, II, and IV. The chancellor, however, granted partial summary judgment in favor of Burnette on Wilmington Trust's unjust-enrichment claim (Count III).

¶17. Burnette now appeals the chancellor's grant of partial summary judgment in favor of Wilmington Trust on Counts I, II, and IV; and Wilmington Trust cross-appeals the chancellor's grant of partial summary judgment in favor of Burnette on its unjust-enrichment

claim.[1]

## STANDARD OF REVIEW

¶18. This Court "conduct[s] a de novo review of a trial court's grant of summary judgment." *Estate of White v. White*, 152 So. 3d 314, 316 (¶9) (Miss. 2014). "A civil defendant may raise res judicata in a motion for summary judgment where a plaintiff's suit centers around issues decided in a previous lawsuit." *Id*. at 316-37 (¶9). In viewing the evidence in the light most favorable to the nonmoving party, summary judgment is proper where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Mitchell v. Ridgewood E. Apartments LLC*, 205 So. 3d 1069, 1073 (¶13) (Miss. 2016) (quoting M.R.C.P. 56(c)).

## DISCUSSION

### I. Res Judicata

¶19. In response to the grant of summary judgment on Wilmington Trust's claims in Counts I, II, and IV, Burnette contends there is a genuine issue of material fact regarding whether Wilmington Trust was the true holder of the promissory note and deeds of trust. The chancellor held that this claim was barred under the doctrine of res judicata. After a de novo review, we agree.

¶20. Under the doctrine of res judicata, parties are barred "from litigating claims within the

---

[1] The chancellor also issued rulings and granted partial summary judgment on other various counterclaims and defenses raised by the parties, thereby disposing of all the issues in the case below. However, in light of the lengthy and tedious procedural history already recounted, we omit these details, as they are not at issue on appeal.

scope of the judgment in a prior action." *Hill v. Carroll Cty.*, 17 So. 3d 1081, 1084 (¶8) (Miss. 2009) (citation and internal quotation marks omitted). "This includes claims that were made or should have been made in the prior suit." *Id.* "The doctrine of res judicata is fundamental to the equitable and efficient operation of the judiciary and reflects the refusal of the law to tolerate a multiplicity of litigation." *Gibson v. Williams, Williams & Montgomery P.A.*, 186 So. 3d 836, 844 (¶16) (Miss. 2016) (citation and internal quotation marks omitted). "The courts cannot revisit adjudicated claims[,] and all grounds for[] or defenses to recovery that were available to the parties in the first action, regardless of whether they were asserted or determined in the prior proceeding, are barred from re-litigation in a subsequent suit under the doctrine of res judicata." *Id.* (citation and internal quotation marks omitted).

¶21. "Under the principle known as 'bar,' res judicata precludes claims which were actually litigated in a previous action." *Hill*, 17 So. 3d at 1084 (¶9). "Under the principle known as 'merger,' res judicata prevents subsequent litigation of any claim that should have been litigated in a previous action." *Id.* at 1084-85 (¶9).

¶22. In order for res judicata to apply, the following four identities must be present : "(1) identity of the subject matter of the action; (2) identity of the cause of action; (3) identity of the parties to the cause of action; and (4) identity of the quality or character of a person against whom the claim is made." *Id.* at 1085 (¶10). "[O]nce the four identities of res judicata have been established, any claims that could have been brought in the prior action are barred." *Id.* However, "the absence of any one of the elements is fatal to the defense of

10

res judicata." *Id*. "Additionally, the prior judgment must be a final judgment adjudicated on the merits." *Doss v. Dixon*, 131 So. 3d 1265, 1269 (¶8) (Miss. Ct. App. 2014). "A final judgment on the merits is a judgment based on the evidence rather than on technical or procedural grounds." *White*, 152 So. 3d at 317 (¶10) (citation and internal quotation marks omitted).

¶23. In the prior federal action, the district court's judgment (August 4, 2015) was based on evidence, and not rendered on technical or procedural grounds. As such, it is a final judgment on the merits for the purposes of res judicata. We now turn to examine whether the four identities are present for res judicata to apply.

### A. Identity of the Subject Matter of the Action

¶24. "The doctrine of res judicata bars a second action between the same parties on the subject matter directly involved in the prior action." *Hill*, 17 So. 3d at 1085 (¶12) (citation omitted). "In older cases, [the supreme court] has referred to subject[-]matter identity as identity in the thing sued for." *Id*. (citation and internal quotation marks omitted). "More recently, the [supreme court] defined subject matter as the 'substance' of the lawsuit." *Id*. In the instant case, the subject matter of the prior federal action is the same as the subject matter of this case: Wilmington Trust's (and its predecessors') attempt to foreclose on Burnette's property under the deeds of trust and promissory note following the Avakians' default. Therefore, the subject-matter identity is met.

### B. Identity of the Cause of Action

¶25. The "cause of action" in the suits must also be the same. *Id*. at (¶13). The supreme

court has defined the "cause of action" as "the underlying facts and circumstances upon which a claim has been brought." *Id*. (citation omitted). The underlying facts and circumstances giving rise to all the previous litigation, including the prior federal case, are identical to those in the present case on appeal: the Avakians executed certain deeds of trust to secure a loan for the subject property, and later defaulted under the promissory note, which prompted Wilmington Trust (and its predecessors) to seek foreclosure. The cause-of-action identity is met.

### C. Identity of the Parties to the Cause of Action

¶26. "Although identity of the parties is a necessary element of res judicata, [the supreme court] repeatedly has held that 'strict identity of parties is not necessary . . . if it can be shown that a nonparty stands in privity with the party in the prior action.'" *EMC Mortg. Corp. v. Carmichael*, 17 So. 3d 1087, 1090-91 (¶13) (Miss. 2009).

> Privity is a word which expresses the idea that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties.

*Fason v. Trussell Enters. Inc.*, 120 So. 3d 454, 460 (¶18) (Miss. Ct. App. 2013) (quoting *In re Estate of Bell*, 976 So. 2d 965, 968 (¶7) (Miss. Ct. App. 2008)).

¶27. In the prior federal case, Citibank was initially named as a defendant in Burnette's suit to enjoin the foreclosure. In 2012, Citibank assigned the promissory note and deeds of trust to Wilmington Trust, and Wilmington Trust replaced Citibank as trustee. Thus, Wilmington Trust is undoubtedly in privity with Citibank in regard to the previous litigation between Citibank and Burnette. Furthermore, in the prior federal case, the district court granted

12

Citibank's motion to substitute Wilmington Trust as the defendant and the final judgment and memorandum opinion were entered as to Wilmington Trust's interests. Thus, the identities-of-the-parties element is met.

### D. Identity of the Quality or Character of a Person Against Whom the Claim is Made

¶28. "Our supreme court has noted that it has not 'explicitly defined the identity of the quality or character of a person against whom the claim is made.'" *Fason*, 120 So. 3d at 460 (¶20) (quoting *Hill*, 17 So. 3d at 1086 (¶18)). However, examples and applications of this identity exist, particularly where the parties are the same in the relevant actions and acting in the same interests or capacity. *See Hill*, 17 So. 3d at 1086-87 (¶¶18-19); *Black v. City of Tupelo*, 853 So. 2d 1221, 1225 (¶11) (Miss. 2003). Here, it is clear that the quality and character of the parties, Wilmington Trust as trustee and Burnette as executor for the Estate and individually, are the same in this case as in the prior federal action, and are acting in their same respective interests in the present case as in the prior action. As such, this identity is met.

¶29. Again, "once the four identities of res judicata have been established, any claims that could have been brought in the prior action are barred." *Hill,* 17 So. 3d at 1085 (¶10). This is true for "all grounds for, or *defenses to recovery* that were available to the parties in the first action, *regardless of whether they were asserted or determined in the prior proceeding . . . .*" *Gibson*, 186 So. 3d at 844 (¶16) (emphasis added).

¶30. In the prior federal action, Burnette could have claimed that Wilmington Trust was not the true holder of the deed of trust or promissory note, thereby contesting Wilmington

13

Trust's right to foreclose on Burnette's home. However, as the federal case reflects, Burnette instead chose to argue that Citibank's lawsuit for foreclosure became moot when its interest as trustee was transferred to Wilmington Trust. *See Avakian*, 2015 WL 4643129, at *2. The federal district court found that Burnette's argument lacked merit, because Rule 25 of the Federal Rules of Civil Procedure states that when "an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." *Id*. (quoting Fed. R. Civ. P. 25(c)).

¶31. Additionally, in response to Burnette's argument, Citibank moved to substitute Wilmington Trust, and still, Burnette did not then claim that Wilmington Trust was not the true holder of the deed of trust or promissory note. Rather, as the district court noted, "[Burnette] does not dispute that Wilmington succeeded Citibank as trustee on December 3, 2012. In fact, [Burnette] relies upon the complete transfer of Citibank's interest to Wilmington in arguing that this action is now moot because Citibank no longer has any interest in the outcome." *Id.* at *3. The district court granted Citibank's motion to substitute Wilmington Trust as the defendant, and the district court rendered a final judgment in Wilmington Trust's favor, finding that it could foreclose. In the instant case, the chancellor properly noted that the right to foreclose had already been decided by the federal district court. After a de novo review, this Court too finds that res judicata applies. Thus, Burnette is precluded from claiming that Wilmington Trust was not the true holder of the deed of trust and promissory note. Accordingly, Wilmington Trust's motion for partial summary judgment

14

with respect to Counts I, II, and IV of the complaint was properly granted.

## II. Cross-Appeal: Unjust Enrichment

¶32. On cross-appeal, Wilmington Trust claims the chancery court erred when it granted Burnette's motion for summary judgment on its unjust-enrichment claim. The parties agree that Burnette lived and conducted a bed-and-breakfast business on the subject property without making any loan or rent payments under the promissory note or deed of trust since July 2010. It is also undisputed that Burnette profited through her commercial use of the property, although the parties dispute the amount of profit. As such, Wilmington Trust argues that Burnette has been unjustly enriched.

¶33. "An unjust[-]enrichment action is based on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." *Beasley v. Sutton*, 192 So. 3d 325, 332 (¶23) (Miss. Ct. App. 2015) (citation and internal quotation marks omitted). However, "[u]njust enrichment applies to situations where there is no legal contract . . . ." *Id.* (citation and internal quotation marks omitted).

¶34. Here, Wilmington Trust cannot recover damages under an unjust-enrichment claim because there is a contract between the parties—the deed of trust and promissory note. Under the terms of the deed of trust, Wilmington's remedy in the event of a default was foreclosure. Wilmington Trust argues that the deed of trust contemplated only that the home would be used for a residence; however, there was nothing in the deed of trust that prohibited the home from being rented out. At a hearing on the summary-judgment motion, Wilmington Trust acknowledged that neither the deed of trust nor the promissory note contained an

15

assignment-of-rents-and-profits provision.  As such, because the parties' relationship is governed by contract, damages based on unjust enrichment are not an appropriate remedy.[2] Thus, the chancery court properly granted summary judgment in favor of Burnette on this claim.

¶35.    **ON DIRECT APPEAL: AFFIRMED.  ON CROSS-APPEAL: AFFIRMED.**

**IRVING AND GRIFFIS, P.JJ., CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.    BARNES, J., NOT PARTICIPATING.**

---

[2] The chancellor did, however, order Burnette "to pay $2,500.00 per month in rent beginning February 1, 2017, and continuing each month thereafter until an appellate decision is rendered[,]" regarding Wilmington Trust's unjust-enrichment claim.